## MOE v. THOMAS McNALLY CO.

(Supreme Court, Appellate Division, Second Department.  May 6, 1910.)

1. CORPORATIONS (§ 686*)—RECEIVERS—COMPENSATION.

    Where an order appointing ancillary receivers in proceedings to wind up the affairs of a corporation was unauthorized, the court could not, without the consent of the corporation, direct that the receivers be paid out of the corporation's property.

    [Ed. Note.—For other cases, see Corporations, Dec. Dig. § 686.*]

2. CORPORATIONS (§ 686*)—RECEIVERS—APPOINTMENT—VACATION OF APPOINTMENT.

    A corporation may have unconditionally vacated the appointment of ancillary receivers procured by a creditor at large having no judgment or execution returned unsatisfied or other lien on the property of the corporation.

    [Ed. Note.—For other cases, see Corporations, Dec. Dig. § 686.*]

3. CORPORATIONS (§ 554*)—RECEIVERS—APPOINTMENT—OBJECTIONS AND WAIVER.

    Though a court may not at the instance of a simple contract creditor appoint a receiver of a corporation, the corporation may waive the fact that a creditor had not exhausted the remedy at law and may give him the status that a judgment and execution returned unsatisfied would have given him.

    [Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2220; Dec. Dig. § 554.*]

4. CORPORATIONS (§ 686*)—RECEIVERS—COMPENSATION—AGREEMENT.

    Where an ancillary receiver of a corporation was appointed with the consent of counsel appointed by the president of the corporation, who was the general manager of its business, and the board of directors, repudiating the act of the president and such counsel, employed other counsel to procure the vacation of the appointment of a receiver, and such counsel consented on the vacation of the appointment that the receiver should be paid for his services already rendered, the corporation was liable for such compensation.

    [Ed. Note.—For other cases, see Corporations, Dec. Dig. § 686.*]

5. RECEIVERS (§ 198*)—COMPENSATION—STATUTORY PROVISION.

    Under Code Civ. Proc. § 3320, providing that a receiver, except as otherwise specially prescribed by statute, is entitled, in addition to his necessary expenses, to commissions not exceeding 5 per cent. on the sums received and disbursed by him, the commissions must be confined to the sums received and paid out, and cannot be paid on unpaid labor claims and rents accruing, nor on property received and delivered to successors.

    [Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 392–396; Dec. Dig. § 198.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Special Term, Westchester County.

Action by John M. Moe against the Thomas McNally Company for the appointment of a receiver and winding up the affairs of the corporation. From an order vacating a former order appointing ancillary receivers, and an order relating to receivers' commissions, defendant appeals. Former order affirmed, and latter order modified and affirmed.

See, also, 120 N. Y. Supp. 1136.

Argued before JENKS, BURR, THOMAS, RICH, and CARR, JJ.

Smith Lent, for appellant.

Arnold L. Davis (William B. Ellison, on the brief), for respondent.

J. W. Searing, for respondents, Trust Co. of America and J. F. Erny, ancillary receivers.

THOMAS, J. The defendant, organized under the laws of the state of Pennsylvania, and under contract to construct some 10 miles of the Catskill Aqueduct, was financially unable to continue the work. Thereupon the Georgia Florida Lumber Company, a domestic corporation, undertook to advance to the defendant $200,000 upon the delivery to persons named by the Georgia Company of all the stock of the defendant, and the transfer of the control of the defendant to the Georgia Company. The latter company prosecuted the work until it had advanced some $287,000, when dissensions arose concerning the fidelity of McNally, who remained president and active manager in the conduct of the work. On December 15, 1908, McNally went to Pittsburgh and procured the Burton Powder Company to file a bill for the appointment of a receiver of defendant, and caused defendant to appear through a clerk of complainant's attorney and file an answer joining in the prayer for a receiver. Thereupon one Erny, of Pittsburgh, was appointed receiver, with power to take possession of and manage and operate defendant's properties and to conduct its business. Later the decree was vacated upon the grounds that the Burton Powder Company was a simple contract creditor, that McNally had no power to represent the company, and that the suit was collusive. But prior thereto, and on December 18th, two days after the decree was entered in Pennsylvania, at the instigation of McNally, the plaintiff herein, as assignee of a part of the claim of the Burton Powder Company, began an action for the appointment of an ancillary receiver of the assets and property of the defendant within the state of New York, with power to conduct the business and to continue the work, for enjoining suits against the defendant, and for winding up its business, the sale of its property, and the distribution of the proceeds. A summons and complaint and notice of motion for the appointment of an ancillary receiver were served upon McNally, who secured as attorney for the defendant Thompson, a clerk in the office of the plaintiff's attorney, who accepted short notice of the application for a receiver and consented to his appointment. On the same day Justice Tompkins appointed the Trust Company of America and Erny ancillary receivers of the defendant's property.

On December 23, 1908, the board of directors of defendant passed

a resolution repudiating the apparent participation of defendant in the first suit, and authorized attorneys named by them to take proper steps to vacate the decree, which was done as already stated. On February 2, 1909, the board of directors passed a similar resolution in reference to this action, and appointed A. C. Johnson as its attorney. On February 11th Justice Tompkins granted an order to show cause why the order appointing the ancillary receivers should not be vacated, and upon the return thereof refused to vacate the order appointing ancillary receivers "until new and original receivers are appointed in this state." This order to show cause preceded the annulment of the decree in Pennsylvania. Justice Tompkins suggested that the parties agree upon a proper person for appointment as receiver, and for purposes of consideration by those interested adjourned the matter to February 27th, when the court decided to appoint general receivers of defendant's property within this state. Thereupon one Horton and others, judgment creditors, brought an action against defendant wherein by defendant's consent Odell and Paine were appointed receivers by order of March 3, 1909. On March 10th an order was entered vacating the order of December 18th appointing the ancillary receivers, and in this order, as well as in the order of March 3d, there was direction that the fees and expenses of the ancillary receivers should be paid. The order of March 3d in the Horton action and March 10th in this action were procured, drawn, and entered by the attorney for the defendant.

It is beyond doubt that Johnson, the designated attorney for the defendant, agreed fully and explicitly to the provision in both orders for reimbursing the ancillary receivers and for the payment of their commissions, that this agreement was announced to the court, and that all parties acted accordingly. The defendant repudiates the action of this attorney, whom it authorized by resolution to act for it, and through other attorneys asserts that the court had not power to make the direction for payment to the ancillary receivers, and that Johnson, defendant's attorney, could not confer such power. It is beyond question that the defendant's property, including its contract with the city of New York, was in grave peril, and that its affairs were in disorder. Even the Georgia Company had secured an attachment against it, and it was harassed by other creditors. The protection of the court was necessary, and the opportunity to help was afforded by the application for the appointment of the ancillary receivers in this action. Therefore there was merit in directing that they should be paid. If the order appointing the ancillary receivers was unauthorized, the court could not, without defendant's consent, direct that they be paid or reimbursed out of defendant's property. Pittsfield Nat. Bank v. Bayne, 140 N. Y. 321, 35 N. E. 630; Weston v. Watts, 45 Hun, 219; Home Bank v. Brewster & Co., 33 App. Div. 330, 335, 53 N. Y. Supp. 867. In the action at bar the defendant was entitled to insist that the order appointing the ancillary receivers be vacated unconditionally. Chapin v. Foster, 101 N. Y. 1, 3 N. E. 786; Matter of Bradner, 87 N. Y. 171, 176, 177, 179; Pulver v. Harris, 52 N. Y. 73; Scofield v. Kreiser, 61 Hun, 368, 16 N. Y. Supp. 126; People v. Oriental Bank,

124 App. Div. 741, 109 N. Y. Supp. 509; Tompkins v. Smith, 62 How. Prac. 499, 503, affirmed 89 N. Y. 602; Bank of U. S. v. Jenkins, 18 Johns. 305, 309. The court has no power to appoint a receiver of a corporation upon the filing of a bill by a creditor at large, nor until he has a judgment and an execution returned unsatisfied. Dunlevy v. Tallmadge, 32 N. Y. 457, 459; Adee v. Bigler, 81 N. Y. 349; Kraemer v. Williams, 131 App. Div. 236, 115 N. Y. Supp. 721; Lehigh Coal, etc., Co. v. Central R. R. of N. J., 43 Hun, 546; Hollins v. Brierfield Coal & Iron Co., 150 U. S. 371, 378, 14 Sup. Ct. 127, 37 L. Ed. 1113; Cates v. Allen, 149 U. S. 451, 457, 13 Sup. Ct. 883, 977, 37 L. Ed. 804.

In the case at bar there is no distinction between the appointment of receivers of a corporation and the property of the corporation. The bill was filed for the very purpose of winding up the corporation and distributing its assets in this state, so that Popper v. Supreme Council, 61 App. Div. 405, 70 N. Y. Supp. 637, has no application. The plaintiff had no special interest in or lien upon the property. He was not a judgment creditor, nevertheless he filed a bill in equity as if he had such a lien or the right of such a creditor. The court acquired jurisdiction of the defendant by service of the summons upon its president. He was its president, notwithstanding by arrangement he was by convention limited in his usual functions. He caused the corporation to appear through an attorney. It was the usual act of the president of a corporation, and he was clothed with apparent power to do it. The defendant repudiated his power, but it had held him out to the world as its supreme officer. Not only had it bestowed upon him the titular authority, but it had placed him in the management of every department of its business. In any case the service upon the president brought the defendant into court. What the court might thereupon order or decree is a distinct question. As has been noticed, the plaintiff was a simple contract creditor, and the court could not in his action appoint a receiver, yet the defendant had a right to waive the fact that the plaintiff had not exhausted his remedy at law, and give him a status that such judgment and execution returned unsatisfied thereon would have given him.

In Hollins v. Brierfield Coal & Iron Co., supra, it was considered that simple contract creditors cannot come into a court of equity to obtain seizure of the property of the debtor. It was urged on the part of the plaintiff that the court "has sustained the validity of proceedings and decrees in suits of this nature, in which it appeared that the plaintiffs had not exhausted their remedies at law, and the cases of Sage v. Memphis & Little Rock Railroad, 125 U. S. 361 [8 Sup. Ct. 887, 31 L. Ed. 694], and Mellen v. Moline Iron Works, 131 U. S. 352 [9 Sup. Ct. 781, 33 L. Ed. 178], are cited as illustrations." To this it is replied in the opinion:

"It will be noticed that in neither of them was the objection made at the outset, and when action on the part of the court was invoked. Defenses existing in equity suits may be waived, just as they may in law actions, and, when waived, the cases stand as though the objection never existed. Given a suit in which there is jurisdiction of the parties, in a matter within the general scope of the jurisdiction of courts of equity, and a decree rendered will

be binding, although it may be apparent that defenses existed which if presented would have resulted in a decree of dismissal.   Take the present case as an illustration:  Suppose the corporation and other defendants had made no defense, and, without expressly consenting, had made no objection to the appointment of a receiver, and the subsequent distribution of the assets of the corporation among its creditors;  it cannot be doubted that a final decree, providing for a settlement of the affairs of the corporation and a distribution among creditors could not have been challenged on the ground of a want of jurisdiction in the court, and that notwithstanding it appeared upon the face of the bill that the plaintiffs were simple contract creditors, because the administration of the assets of an insolvent corporation is within the functions of a court of equity, and, the parties being before the court, it has power to proceed with such administration.   If there was a defense existing to the bills as framed, an objection to the right of these plaintiffs to proceed on the ground that their legal remedies had not been exhausted, it was a defense and objection which must be made in limine, and does not of itself oust the court of jurisdiction.   This doctrine has been recognized not merely in the cases cited, but also in those of Reynes v. Dumont, 130 U. S. 354 [9 Sup. Ct. 486, 32 L. Ed. 934];  Kilbourn v. Sunderland, 130 U. S. 505 [9 Sup. Ct. 594, 32 L. Ed. 1005];  Brown v. Lake Superior Iron Co., 134 U. S. 530 [10 Sup. Ct. 604, 33 L. Ed. 1021].   None of these cases question the proposition that if the objection is seasonably presented it will be effective."

In the case at bar the court did have jurisdiction of the property. The property was in the state.  It did have jurisdiction of the defendant because the defendant was doing business within the state, and its president and officers were within the state, conducting such business.   The summons was served upon one of such officers, and thereby the defendant was brought before the court pursuant to such summons. .  It is true that, although the defendant was before the court, the court could not have granted plaintiff the relief sought unless aided thereto by defendant's act.   However, the defendant urges that the suit was collusive.   It was collusive in the sense that the company, acting through its president, instigated it for the protection of defendant, and consented to the relief.   The act is not fraudulent, nor is it an imposition upon the court.   It was not the wish, act, or judgment of those who by private contract were controlling the company; but it was the act of the president whom such persons held out to the world as its chief officer, and hence the act of the defendant.   This is not saying that the defendant was irrevocably bound, but the court was asked to act presumptively by the defendant.   Later the time came when the corporation, fully apprised of the situation and represented by its fully authorized agent, consented to the recognition of the receivers so far forth that they should be compensated and reimbursed. It is true they asked in the first instance that the order appointing them be vacated; but, instead of standing firmly upon that notion, they qualified their application by agreeing that such order thereon should be granted in its final form.   The corporation not only did this, but by its participation another action was instituted in which receivers were appointed at its instigation, and in such appointment this defendant consented to a provision that the ancillary receivers should be compensated and reimbursed.   And now the defendant objects that its attorney was without power to make such arrangement.   There must be some limit to the ability of this defendant to repudiate its officers and attorneys.   The salving of its endangered property was

initiated by the ancillary receivers, and the irregularity in their appointment at the instance of a simple contract creditor received the defendant's initial consent, and later the defendant countenanced the appointment to the extent of agreeing to the compensation of the receivers. The defendant's opposition to the power to compensate and reimburse is without merit. The allowances made to the receivers for disbursements is justified, except as to the commissions.

The Code, § 3320, provides that:

"A receiver, except as otherwise specially prescribed by statute, is entitled, in addition to his necessary expenses, to such commissions, not exceeding five per centum upon the sums received and disbursed by him, as the court by which, or the judge by whom, he is appointed allows."

The section is explicit and does not need interpretation. The receivers have received and disbursed $2,577.18; they have advanced and incurred bills to the amount of $7,139.27; the unpaid labor claims are $11,345.27; and rents accrued are $940.60—total, $19,389.14. The commissions must be confined to the sums received and paid out, which in no view can exceed the first two items, and the property received and delivered to their successors is excluded. Matter of Woven Tape Skirt Co., 85 N. Y. 506; People v. Mutual Associates, 39 Hun, 49, 51; Matter of Orient Mutual Ins. Co., 66 Hun, 633, 21 N. Y. Supp. 237; Matter of Bank of Niagara, 6 Paige, 213. Authorities relating to the commissions allowable to trustees, executors, and administrators aid the above conclusion. Phœnix v. Livingston, 101 N. Y. 451, 457, 5 N. E. 70; McAlpine v. Potter, 126 N. Y. 285, 290, 27 N. E. 475; Linsly v. Bogert, 87 Hun, 137, 33 N. Y. Supp. 975, affirmed 152 N. Y. 646, 46 N. E. 1148; Matter of Popp, 123 App. Div. 2, 107 N. Y. Supp. 277; Matter of Todd, 64 App. Div. 435, 436, 72 N. Y. Supp. 277; Matter of Whipple, 81 App. Div. 589, 81 N. Y. Supp. 393; Matter of Hurst, 111 App. Div. 460, 97 N. Y. Supp. 697; Matter of Dill, 60 Misc. Rep. 294, 113 N. Y. Supp. 384; Matter of Fisk, 45 Misc. Rep. 298, 92 N. Y. Supp. 394; Matter of Ingraham, 60 Misc. Rep. 44, 112 N. Y. Supp. 763. In the Matter of Smith Co., 31 App. Div. 39, 52 N. Y. Supp. 877, the court considered that a receiver appointed under section 2423 of the Code of Civil Procedure "may be entitled, in an extreme case, to 2½ per cent. of the value of the property coming into his hands for receiving and protecting the same." I find nothing in section 3320 that justifies such conclusion, and the respondent suggests no other statute applicable. Indeed, counsel for the respondent seems to rely upon section 3320.

The order of March 10th should be affirmed; the order of July 29th should be modified by fixing the receivers' commissions at the sum of $485.82, and, as so modified, should be affirmed, without costs. All concur.